WARNER, J.
 

 Appellant, convicted of burglary and grand theft, challenges his conviction for grand theft. He claims that the evidence was insufficient to prove that he was in possession of the stolen items, and nor, he argues, did the state identify specific items of jewelry or their values. As to the latter issue, the matter was not preserved for appeal. As to the former, we conclude that the evidence was sufficient to sustain the conviction. We thus affirm.
 

 At the non-jury trial, victim Richard Trask testified that at the time of the burglary, he and his wife lived in a ground floor unit at a condominium in Palm Beach Gardens. They were in the process of moving and had boxes in the unit, but on the morning of the burglary everything was neat and orderly when they both left to feed their horse. No jewelry was out and the door was locked when they left.
 

 When they returned about forty-five minutes later, there was an unfamiliar car backed into one of the parking spots right next to their unit, which Mr. Trask noticed because he knew his neighbors’ cars. Mr. Trask testified that as he was coming around the corner toward the front door to his unit, he “saw the front door opening and ... saw the criminal coming out [the] front door.” He did not recognize the person but was able to describe his physical features and that he was wearing “very distinct bright yellow T-shirt with the number 85” on the back of it. Mr. Trask identified appellant as the man leaving his house.
 

 Mr. Trask was about ten to fifteen feet away from the door at that point. Mr.
 
 *1162
 
 Trask yelled “hey” to the man as he left, and the man turned around and made an obscene gesture. Mr. Trask was able to see his face at that point and stated that “[h]e looked like he possibly was carrying something,” since “[h]e had his arms together” tight against his body. Trask, however, did not see any specific item in his hands. Appellant then fled around the side of the building.
 

 Trask started to chase appellant but then returned to the condominium where his wife was calling 911. They discovered that their place had been ransacked with drawers opened and their belongings thrown around. Trask then jumped in his car to chase appellant. He saw appellant running along a canal which ran alongside of the condominium complex. Trask lost visual contact with him and returned to the condominium. Later, the couple met with Palm Beach Gardens Police Department officers, who had apprehended a suspect about a quarter mile from the condo building very shortly thereafter. Mr. Trask was able to identify him immediately.
 

 After he returned to his unit, Trask observed pry marks on the front door, and some of the wood was broken. Both noted that Mrs. Trask’s jewelry box was upside down on the bed. All of her heirloom jewelry from her grandmother plus her wedding ring were gone. These included rings, necklaces, and bracelets all appraised at approximately $18,000. The box had been in its place with all the jewelry inside when they left that morning. In addition $500 in cash was missing from the bedroom. They never recovered any of the jewelry or the cash.
 

 Two officers testified and described their pursuit and apprehension of appellant, as well as the Trasks’ positive and immediate identification of him. They also inspected the Trasks’ unit and took pictures, which were admitted into evidence.
 

 At the close of the state’s case, defense counsel moved for judgment of acquittal, arguing that the state had not shown that appellant was ever in possession of any stolen property. He also contended that the state had proved nothing more than the appellant’s proximity to the unit. The court denied the motion.
 

 Appellant testified in his defense. At the time of the incident, he was employed by an escort agency, which required him to wait for the girls outside the residence in which they were on call. He was at the Trasks’ condominium building that day for that purpose. When he saw Mr. Trask, he walked away, because he was smoking marijuana while waiting. He said he was standing by their door and never entered the apartment; he denied taking anything from the apartment. Appellant claimed that he did not tell the officers about his job because “it’s like an undercover prostitution thing.”
 

 The trial court found appellant guilty of both burglary and grand theft. It sentenced him to fifteen years for the burglary as a prison releasee reoffender and five years for the grand theft, consecutive to each other and to any other term that appellant was currently serving from any other convictions.
 

 He appealed his convictions, and this court affirmed.
 
 Brown v. State,
 
 993 So.2d 534 (Fla. 4th DCA 2008). He then filed a petition alleging ineffective assistance of appellate counsel, pursuant to rule 9.141(c), Florida Rules of Appellate Procedure, alleging four grounds. This court granted appellant’s petition in part, limiting the issue on appeal to whether the trial court erred in denying the motion for judgment of acquittal on the charge of grand theft.
 

 This court reviews de novo the sufficiency of evidence to support a ver-
 
 *1163
 
 diet.
 
 Valentin v. State,
 
 974 So.2d 629, 630 (Fla. 4th DCA 2008). In a circumstantial evidence case, “[a]lthough the state is not required to rebut every variation of events which may be inferred from the evidence, it is required to present competent, substantial evidence which is inconsistent with the defendant’s theory of events.”
 
 Lesane v. State,
 
 895 So.2d 1231, 1233 (Fla. 4th DCA 2005) (citing
 
 State v. Law,
 
 559 So.2d 187, 189 (Fla.1989)).
 

 To prove the crime of theft, the state was required to prove that appellant knowingly obtained or used, or endeavored to obtain or use, the Trasks’ property with intent to permanently or temporarily deprive the Trasks of its use. § 812.014(l)(a), Fla. Stat. (2004). Appellant argues that the state proved only his presence at the condominium, and “mere presence at the scene of the crime [is] insufficient to establish participation in the offense.”
 
 Garcia v. State,
 
 899 So.2d 447, 450 (Fla. 4th DCA 2005). There was no direct evidence that he possessed any property of the Trasks, which in this case would be the jewelry and the cash.
 

 The state’s case, however, rested on more than “mere presence” at the scene. Mr. Trask observed appellant exiting the condominium, from which the Trasks had been absent for only forty-five minutes. Appellant was a stranger. Mr. Trask believed that appellant appeared to be holding something, although he couldn’t identify anything specific. However, when the Trasks entered their condominium, they found it ransacked and the jewelry box turned over with all of the valuable items and the cash gone. Those items had been there when the Trasks left their unit. Pry marks on the front door evidenced a forced entry. Equally important, appellant fled the scene, and flight is evidence of consciousness of guilt.
 
 Straight v. State,
 
 397 So.2d 903, 908 (Fla.1981).
 

 Appellant’s reasonable hypothesis of innocence to which he testified was that he was not in the condominium but simply at the complex waiting for an escort who was with a client. His story, however, was directly contradicted by Mr. Trask who definitively testified that he observed appellant exiting his apartment. Therefore, the state presented evidence inconsistent with appellant’s reasonable hypothesis.
 
 Law,
 
 559 So.2d at 189. As there was sufficient evidence to support the grand theft charge, the court did not err in denying the motion for judgment of acquittal, either at the close of the state’s case or the close of all the evidence.
 

 Appellant primarily relies on
 
 Jenkins v. State,
 
 342 So.2d 1097 (Fla. 1st DCA 1977),
 
 Broner v. State,
 
 559 So.2d 745 (Fla. 2d DCA 1990), and
 
 S.R.W. v. State,
 
 725 So.2d 1140 (Fla. 2d DCA 1998), to support his position that the evidence was insufficient to sustain his conviction. Although in each case the appellate court found the evidence insufficient to support a conviction for grand theft, we find these cases distinguishable. In
 
 Jenkins,
 
 342 So.2d at 1097, the defendant was invited into the victim’s residence. When the victim left the room for a few moments and returned, Jenkins was gone and an envelope containing the victim’s social security check was missing. In
 
 Broner,
 
 559 So.2d at 746, the defendant visited his aunt’s home. The aunt went upstairs for a period of time. When she returned, Broner was gone, as was her videocassette player. A witness saw Broner leave the residence without anything in his hands. One would expect that someone would notice an item as large as a videocassette player had Broner taken it. In
 
 S.R.W.,
 
 725 So.2d at 1140, a pager was found to be missing when S.R.W. was in the home of her friend. S.R.W. helped her friend look for the pager but it was never found. In each of these cases, and in
 
 *1164
 
 contrast to the facts of this case, the defendant was either a friend or relative invited into the home. After the defendant left, an item was found to be missing. In none of these cases was there evidence of forced entry, burglary, ransacking of the home, or flight.
 

 We also distinguish
 
 M.E.R. v. State,
 
 993 So.2d 1145 (Fla. 2d DCA 2008), which was not cited by the parties but is similar to the foregoing cases. There, a witness saw M.E.R. hanging around an apartment building where the victimized family lived. The family left around 2:00 p.m., and the witness saw M.E.R., who was a former boyfriend of the daughter in the family, enter the apartment. He exited later with his shirt off and wrapped under his arm. The witness could not tell if there was anything in the shirt. Several hours later the family returned home and the mother discovered that three pairs of her shoes and various electronic games, a Play Station, clothing, and a cell phone were' missing. M.E.R. had been seen hanging out in the apartment breezeway with several other youths. The court held that the evidence was insufficient to convict M.E.R. of grand theft, because he had not been seen with any of the stolen items, and any of the other children with him could have entered the apartment and taken the items. The state charged M.E.R. with the theft only of the shoes and the Play Station. As in
 
 Broner,
 
 these items were of a size that would have been noticed by the witness who saw M.E.R. exit the apartment. In
 
 M.E.R.,
 
 as in the other cases, there was no forcible entry, no ransacking of the apartment, and no flight.
 

 Appellant also claims that the state failed to offer sufficient proof of the value of the items stolen. This issue has not been preserved for appeal. Not only was no objection made to the testimony of valuation of the items stolen, but defense counsel did not move for a judgment of acquittal on this ground. “To preserve an argument for appeal, it must be asserted as the legal ground for the objection, exception, or motion below.”
 
 Woods v. State,
 
 733 So.2d 980, 984 (Fla.1999).
 
 See also
 
 Fla. R.Crim. P. 3.380(b) (motion for judgment of acquittal must fully set forth the grounds on which it is based).
 

 For the foregoing reasons, we affirm the grand theft conviction.
 

 STEVENSON and CONNER, JJ., concur.